EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Vidal Rodríguez Amaro | 2013 TSPR 97<br><br>189 DPR \_\_\_\_ |

Número del Caso: TS-5018


Fecha: 8 de agosto de 2013


Oficina de Inspección de Notaría:

       Lcdo. Manuel Ávila de Jesús
       Director


Materia: Conducta Profesional – La suspensión será efectiva una vez advenga final y firme la Sentencia conforme la Regla 45 del Reglamento del Tribunal Supremo sobre reconsideración.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Vidal Rodríguez Amaro               TS-5018

PER CURIAM

San Juan, Puerto Rico, a 8 de agosto de 2013.

En el presente caso nos corresponde determinar la capacidad mental de un miembro de la profesión legal. Ello, porque si un abogado padece de sus facultades mentales, difícilmente podrá desempeñarse a la altura que exige el Código de Ética Profesional, 4 L.P.R.A., Ap. IX.

Por esa razón es que nos vemos obligados en el día de hoy a suspender preventivamente al Lcdo. Vidal Rodríguez Amaro del ejercicio de la abogacía.

**I**

El licenciado Rodríguez Amaro fue admitido al ejercicio de la abogacía el 12 de diciembre de 1975 y, posteriormente, al ejercicio de la notaría el 4 de febrero de 1976.

El 2 de abril de 2004 fue suspendido del ejercicio de la abogacía y de la notaría por incumplir con los requerimientos de esta Curia. Así las cosas, se ordenó la incautación de su obra notarial, la cual fue entregada a la Oficina de Inspección de Notarías (ODIN). Luego de una moción de reconsideración, el 16 de julio de 2004 reinstalamos al licenciado únicamente al ejercicio de la abogacía. Se dejó pendiente la reinstalación al ejercicio de la notaría hasta que la Directora de ODIN rindiera un informe sobre el estado de la obra notarial.[1]

Ahora bien, el caso que tenemos ante nosotros surge luego de que el Hon. Francisco J. Rosado Colomer, juez del Tribunal de Primera Instancia, Sala de Mayagüez, ordenara que se emitiera copia a este Tribunal de una moción informativa, de la minuta de una vista y de la resolución emitida en el caso de Sucn. Juan Ortiz Rodríguez, etc. v. María Ortiz Vélez, IAC1997-0481. En síntesis, estos documentos indican que el 23 de julio de 2012 se celebró una vista persiguiendo la efectividad de la sentencia en el caso antes mencionado. Allí, se le

---

[1] Es importante señalar que aunque el Lcdo. Vidal Rodríguez Amaro ha subsanado varias deficiencias de su obra notarial, aún permanecen deficiencias sin subsanar y, por lo tanto, no se han podido aprobar los protocolos.

informó al juez que el licenciado Rodríguez Amaro no asistió a la vista porque se encontraba incapacitado e inhabilitado para ejercer la práctica y estaba residiendo en un hogar de ancianos. Además, en la moción informativa, presentada por la Sucn. Julio C. Ortiz Vélez, se hizo constar que se les había hecho imposible conseguir al licenciado y desconocían de su paradero. Ante esta situación, el juez del foro de instancia paralizó los procedimientos, ordenó a las partes a conseguir nueva representación legal y ordenó que se informara a este Tribunal sobre la capacidad mental del licenciado Rodríguez Amaro.

Luego de evaluar la resolución del Tribunal de Primera Instancia, la minuta elevada ante nuestra consideración, así como la moción informativa presentada por la sucesión designamos al Lcdo. Carlos Dávila como Comisionado Especial (Comisionado) para que recibiera pruebas sobre la capacidad mental o emocional del licenciado Rodríguez Amaro, según la Regla 15 de nuestro Reglamento.[2]

Así las cosas, conforme a la Regla 15, *supra*, el 8 de enero de 2013 el Comisionado concedió al licenciado Rodríguez Amaro y al Procurador General de Puerto Rico (Procurador) diez días para informar el nombre y dirección postal del siquiatra designado por cada uno que formaría parte del panel de médicos que examinarían al

---

[2] 4 L.P.R.A. Ap. XXI-A.

abogado y ofrecerían su testimonio pericial al Comisionado. El 17 de enero de 2013, el Procurador informó que el siquiatra designado por su parte sería el Dr. Raúl E. López. Ahora bien, debido a que el licenciado Rodríguez Amaro no compareció, el Comisionado le concedió un término final de diez días para que informara quién sería el siquiatra designado por él. En esta orden el Comisionado ordenó al Alguacil del Tribunal a notificarle personalmente al licenciado.

Así, el 20 de febrero de 2013 la alguacil Verónica Jurado (alguacil) acudió a la oficina del licenciado Rodríguez Amaro a diligenciar la orden. Al llegar allí se percató que la oficina se encontraba desocupada. Ante esta situación, preguntó en la Oficina de Servicios Legales si conocían dónde se encontraba el licenciado Rodríguez Amaro. La directora de la oficina, la Lcda. Carmen M. Ramos, le indicó a la alguacil que el licenciado se encontraba recluido en un hogar para ancianos llamado Hogar la Bondad. Así las cosas, la alguacil acudió al hogar de ancianos y corroboró que allí se encontraba el licenciado. Sin embargo, le indicaron que el licenciado se encontraba en un régimen de medicamentos y que solo de vez en cuando tenía momentos de lucidez. Por tal razón, devolvió el diligenciamiento negativo.

No obstante, el 1 de marzo de 2013 compareció el Lcdo. Luis E. Enríquez Marín en representación del

licenciado Rodríguez Amaro e informó que no era necesario designar un siquiatra. El licenciado Enríquez Marín indicó que en el 2009 el licenciado Rodríguez Amaro sufrió dos preinfartos y al no tener familia en Puerto Rico su secretaria, la Sra. Maritza Santos, se hizo cargo de él. Explicó que de ahí en adelante el licenciado comenzó a desmejorar y a sufrir lapsos de pérdidas de memoria. Ante esa situación, el Dr. Urselio Álvarez Pagán del Hospital de Veteranos de Mayagüez lo diagnosticó con "Vascular Dementia" y "Diabetes with neurological manifestations". Añadió que posteriormente, debido a que la señora Santos ya no podía cuidarlo, fue ingresado al Hogar la Bondad de Mayagüez y es allí donde se encuentra actualmente. El licenciado Enríquez Marín presentó, junto con la moción, las certificaciones médicas que indican las condiciones de salud del licenciado Rodríguez Amaro y una certificación de la presidenta del Hogar la Bondad. La certificación del hogar indica que el licenciado se encuentra en ese centro desde el 17 de enero de 2011, que no puede valerse por sí mismo y que sufre de constantes lapsos de pérdida de memoria.

De acuerdo con lo anterior, el Comisionado emitió un informe en el cual recomendó que se suspenda indefinidamente al licenciado Rodríguez Amaro del ejercicio de la profesión a tenor de la Regla 15, *supra*, como una medida de protección social. Además, recomendó

que se nombre un abogado para que investigue si el licenciado Rodríguez Amaro tiene casos pendientes y se tomen las medidas inmediatas que fueran necesarias para proteger los intereses de los clientes.

## II

Como parte del poder inherente que tiene este Tribunal para regular la profesión de abogacía en Puerto Rico, nos corresponde velar porque los abogados estén capacitados para cumplir con las responsabilidades de la profesión.[3] Este proceder es parte de nuestro interés para garantizar el buen funcionamiento del Sistema Judicial y los mejores intereses de los funcionarios y abogados que en ella trabajan y postulan.[4]

Con este propósito, se creó la Regla 15 de nuestro Reglamento, *supra*. Esta regla "establece el procedimiento para separar indefinidamente a un abogado del ejercicio de la abogacía, por razón de una condición mental o emocional que le impida desempeñarse competentemente".[5] Ahora bien, distinto a los casos en los que separamos a abogados por violar los cánones del Código de Ética Profesional, el mecanismo dispuesto en esta regla no está catalogado como una sanción

---

[3] In re Valentín Maldonado, 178 D.P.R. 906, 911 (2010); In re Manzano Velázquez, 177 D.P.R. 581 (2009), citando a In re Gómez Morales, 146 D.P.R. 837, 846 (1998).

[4] In re Hernández Rodríguez, 181 D.P.R. 643, 651 (2011); In re Gutiérrez Santiago, 179 D.P.R. 739, 743 (2010).

[5] In re López Morales, 184 D.P.R. 334, 347 (2012); S. Steidel Figueroa, Ética y Responsabilidad Disciplinaria del Abogado, Pubs J.T.S., 2010, pág. 373.

disciplinaria, sino como una medida de protección social.[6]

Así las cosas, el inciso (c) de la Regla 15 dispone el mecanismo a llevarse a cabo para establecer si el abogado está incapacitado mentalmente. Este inciso provee un procedimiento disciplinario especial en el que se designan tres peritos siquiatras.[7] Así, uno de los peritos es nombrado por el Comisionado Especial, otro por el Procurador General, y el último, por el abogado querellado. Estos evaluarán al abogado, llegarán a sus conclusiones y luego informarán al comisionado.[8]

No obstante, el procedimiento disciplinario especial contenido en la Regla 15(c), *supra*, se torna innecesario "cuando la incapacidad mental del abogado queda acreditada por el hecho de mediar una declaración judicial de incapacidad o por estar recluido en un hospital u otro tipo de institución de cuido de enfermos mentales".[9] En lo pertinente, la Regla 15 en su inciso (b) dispone que

> [s]i un abogado o una abogada es declarado o declarada incapaz judicialmente o **es recluido o recluida por incapacidad en una institución para enfermos mentales**, probado el hecho, el Tribunal le suspenderá del ejercicio de la profesión mientras subsista su enfermedad. (Énfasis nuestro).

---

[6] In re López Morales, supra; In re Gutiérrez Santiago, supra, pág. 744.

[7] 4 L.P.R.A. Ap. XXI-A, R. 15(c).

[8] Íd., In re López Morales, supra, págs. 347-348.

[9] In re Valentín Maldonado, supra, pág. 912; In re Costa del Moral, 164 D.P.R. 943, 946 (2005).

Por otro lado, el inciso (g) de la Regla 15, supra, expresa que si este Tribunal determina que el abogado está mentalmente incapacitado, "podrá nombrar a uno o más abogados o abogadas para que inspeccionen los archivos del abogado suspendido o de la abogada suspendida y tomen las medidas inmediatas que sean necesarias en los casos pendientes que este o esta tuviese, para proteger así los derechos de los clientes". Así las cosas, una vez estos abogados realicen la inspección deberán rendir un informe a esta Curia sobre las gestiones realizadas con las recomendaciones pertinentes.[10]

## III

En el presente caso, ha quedado claramente establecido que el licenciado Rodríguez Amaro está impedido de ejercer la profesión de la abogacía dada su condición mental.

En primer lugar, la alguacil de este Tribunal corroboró que el licenciado se encuentra recluido en un hogar para ancianos en Mayagüez. Allí le indicaron que el licenciado Rodríguez Amaro estaba bajo medicamentos, que no siempre se encontraba lúcido y que padece de pérdida de memoria. Por otro lado, el licenciado Enríquez Marín, compareció en representación del licenciado Rodríguez Amaro aceptando que no está capacitado mentalmente para ejercer la profesión y, acompañó evidencia documental de la incapacidad de este

---

[10] 4 L.P.R.A. Ap. XXI-A, R. 15(g).

último. Como mencionáramos, el licenciado Enríquez Marín presentó certificaciones médicas que indican las condiciones mentales que padece el licenciado Rodríguez Amaro. Además, presentó una certificación del Hogar la Bondad en la cual se indica que el licenciado se encuentra allí recluido ya que no puede valerse por sí mismo.

Ante la realidad de que el licenciado Rodríguez Amaro sufre de una condición que afecta su capacidad mental y que se encuentra recluido por ello en un hogar de ancianos, corresponde, de acuerdo con la Regla 15, supra, suspender al abogado indefinidamente de la abogacía como medida de protección social.

**IV**

Por los fundamentos antes expuestos, se suspende indefinidamente al Lcdo. Vidal Rodríguez Amaro del ejercicio de la abogacía, según la Regla 15 del Reglamento de este Tribunal, *supra*, por estar incapacitado para ejercer la profesión. Además, según la Regla 15(g) se nombra al Lcdo. Luis E. Enríquez Marín para que inspeccione los archivos del licenciado Rodríguez Amaro y lleve a cabo las medidas inmediatas que sean necesarias para proteger los intereses de los clientes, incluyendo la entrega de los expedientes.

De otra parte, se le concede un término de treinta días al Lcdo. Manuel E. Ávila De Jesús, Director de la Oficina de Inspección de Notarías, para que someta un

informe respecto al estado de la obra notarial del licenciado Rodríguez Amaro y nos emita una recomendación.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Vidal Rodríguez Amaro                TS-5018


SENTENCIA

San Juan, Puerto Rico, a 8 de agosto de 2013.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se suspende indefinidamente al Lcdo. Vidal Rodríguez Amaro del ejercicio de la abogacía, según la Regla 15 del Reglamento de este Tribunal, por estar incapacitado para ejercer la profesión. Además, según la Regla 15(g) se nombra al Lcdo. Luis E. Enríquez Marín para que inspeccione los archivos del licenciado Rodríguez Amaro y lleve a cabo las medidas inmediatas que sean necesarias para proteger los intereses de los clientes, incluyendo la entrega de los expedientes.

De otra parte, se le concede un término de treinta días al Lcdo. Manuel E. Ávila De Jesús, Director de la Oficina de Inspección de Notarías, para que someta un informe respecto al estado de la obra notarial del licenciado Rodríguez Amaro y nos emita una recomendación.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina.


Camelia Montilla Alvarado
Secretaria del Tribunal Supremo, Interina